588 F.2d 665
 Fed. Sec. L. Rep. P 96,545
Dean C. CHRISTOFFEL, as guardian of the Estate of Lillian E.
Styer, an incompetent, Appellant,
v.
E. F. HUTTON & COMPANY, INC., a corporation, Appellee.
 No. 76-1223.
 United States Court of Appeals,
Ninth Circuit.
 Aug. 21, 1978.
Rehearing Denied Dec. 26, 1978.
 
 Gerald S. Maltz (argued), of Miller, Pitt & Feldman, Tucson, Ariz., for appellant.
 J. Noland Franz (argued), of Carson, Messinger, Elliott, Laughlin & Ragan Phoenix, Ariz., for appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before HUFSTEDLER and GOODWIN, Circuit Judges, and FIRTH,* District Judge.
 HUFSTEDLER, Circuit Judge:
 
 
 1
 Christoffel, the current guardian of the estate of Styer, an incompetent, brought this action against E. F. Hutton & Company, Inc. ("Hutton") seeking to hold Hutton vicariously liable for losses sustained by the incompetent's estate due to Hutton's former employee, Schwager, who both dissipated and misappropriated assets of the estate during his tenure as guardian. Federal jurisdiction was based on Christoffel's claim that Hutton was a "controlling person," within the meaning of section 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78t) and thus liable for any violations of the Securities Laws by Schwager while he was both guardian of the estate and an employee of Hutton. Alternatively, Christoffel sought to impose liability on Hutton under the common law doctrine of respondeat superior. We affirm the district court's grant of summary judgment in favor of Hutton.
 
 
 2
 Styer, an elderly widow, was a long-time customer of Hutton's Tucson, Arizona, office. She dealt with Schwager, who had been employed for many years as an account executive with Hutton. Styer had acquired a portfolio of listed stocks which, in the fall of 1968, had a market value of over $1 million. Styer had become incompetent, and, at the request of her lawyer, Schwager was asked to become guardian of her person and estate. She was declared incompetent by the Superior Court of Arizona on October 3, 1968 and the Superior Court appointed Schwager as her guardian.
 
 
 3
 Schwager asked Hutton for approval of his acting as guardian, while continuing as a Hutton account executive. Hutton gave its permission, subject to the expressed stipulations that Schwager would supply Hutton with court authorizations for all transactions conducted by him through Hutton as guardian for the estate, that he would receive no commission or other compensation from Hutton for any of such security transactions, and that he would supply the firm with yearly court-approved accountings of his transactions as guardian.
 
 
 4
 Schwager opened an account with Hutton as guardian of the Styer estate, through which he conducted all of his purchases and sales of securities for the Styer estate. Early in his stewardship, Schwager decided to diversify the estate's holdings by selling some of the securities in order to buy income producing real property. Pursuant to authorizations from the Superior Court in Arizona, Schwager sold large quantities of the Styer estate's stocks, and invested the proceeds from those sales in several parcels of real estate. He also received authorization to build a commercial building on one of the undeveloped parcels. Some time after businesses were established in the new property, Schwager and his wife undertook two business operations, using not only their own money, but estate funds to finance the operations. Both businesses failed and were placed in bankruptcy. In many other respects Schwager used the estate funds as if they were his own. Schwager completely failed to file the necessary accountings with the Superior Court, and, ultimately his misdeeds were discovered. He was removed as guardian and a surcharge judgment for $381,403.21 was entered against him and his wife in the guardianship proceedings. The judgment was upheld in In re Guardianship of Styer (1975) 24 Ariz.App. 148, 536 P.2d 717. On March 6, 1973, criminal charges were lodged against him and his wife. Proceedings against him were terminated in the fall of the same year after he pleaded no contest to nine counts of grand theft.
 
 
 5
 All of the stock sales, with one minor exception, were approved by orders of the Superior Court, upon petitions prepared by Styer's lawyer. The sales of Styer's securities through Hutton were made at their market values, and the entire net proceeds of all of such sales were paid by Hutton to Schwager as guardian. All of the losses of the estate were caused by Schwager's improvident investment of the proceeds of these sales together with his misappropriation of other portions of the proceeds realized from the stock sales. Apart from the contention that Schwager entertained a secret intention to misuse the proceeds of the sale of the securities, no kind of fraud, misrepresentation, or unfair dealing tainted any of the sales of stocks effected through Hutton. The sole basis of Christoffel's claim against Hutton is its employment of Schwager as an account executive during the time that he was also acting as guardian for the Styer estate.
 
 I.
 
 6
 The district court correctly granted summary judgment against Christoffel on his common law theory because it is the established law of this circuit that section 20(a) supplants vicarious liability of an employer for the acts of an employee applying the respondeat superior doctrine. (Zweig v. Hearst Corporation (9th Cir. 1975) 521 F.2d 1129; Kamen & Co. v. Paul H. Aschkar & Co. (9th Cir. 1967) 382 F.2d 689.) Christoffel acknowledges that the law of the circuit is against him, but he invites us to reconsider that law. Our circuit has a long-standing rule that law declared by one panel of the court cannot be overruled except by the court sitting en banc. We therefore have no occasion to reconsider this rule of long-standing nor to consider other grounds raised by Hutton to justify the grant of summary judgment on this claim.
 
 II.
 
 7
 Christoffel also predicates liability under the Securities Exchange Act of 1934 on § 20(a), which provides: "Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."
 
 
 8
 In order to prevail on his Securities Act claim, Christoffel would have to prove that (1) Schwager's acts constituted a violation of a rule or regulation under the Exchange Act causing injury to Christoffel, and (2) Hutton was a controlling person, within the meaning of section 20(a), in respect of Schwager's acts or omissions in violation of the Act. The parties below assumed, for the purposes of the summary judgment, that Schwager's conduct of the affairs of the guardianship would have subjected him to liability under the securities laws by reason of the fraudulent intent that he secretly entertained when he caused securities to be sold pursuant to court order. We accept that assumption in reviewing the summary judgment.
 
 
 9
 The pivotal question, therefore, is whether Hutton was a "controlling person" within the meaning of section 20(a) by reason of its employment of Schwager, thus rendering it vicariously liable for Schwager's misdeeds. We agree with the district court that the answer is "No."
 
 
 10
 Under Arizona law in effect while Schwager was guardian, exclusive jurisdiction to control a court-appointed guardian rests with the court itself. A guardian, as trustee of his ward, exercises authority delegated by the court to him and is subject to the court's control in the discharge of his duties. (A.R.S. §§ 14-802(B), 14-803, 14-811, 14-812. Downing v. Skluzacek (1944) 61 Ariz. 322, 149 P.2d 680; Garrett v. Reid-Cashion, etc., Co. (1928) 34 Ariz. 245, 270 P. 1044.)
 
 
 11
 Christoffel necessarily concedes that Hutton did not have any legal power to control Schwager's conduct of his guardianship. He does not contend that Hutton's employment of Schwager gave it any authority to intervene in his decisions to sell securities from the estate and to invest the proceeds in other property. He does not contend that Hutton had any active role in the conduct of Schwager which resulted in losses to the estate. Rather, he argues that Hutton was a "controlling person" because it could have refused to permit him to become a guardian, while he was still employed as an account executive, and it could also have influenced him by using its authority as his employer to discourage him from making improvident investments.
 
 
 12
 Although the concept of "control" used in section 20(a) is broad, it is not unlimited. The term was not used by Congress as it is defined within the context of common law agency. Congress declined to define the term because "it would be difficult if not impossible to enumerate or to anticipate the many ways in which actual control may be exerted. A few examples of the methods used are stock ownership, lease, contract, and agency." (H.R.Rep. 1383, 73d Cong., 2d Sess. 26 (1934).) Congress intended the term "control" to encompass relationships with broader variety and scope than those traditionally associated with master and servant, principal and agent. At the same time, Congress also intended a more restrictive meaning than that embraced by agency principles by also requiring some kind of participation by the controlling person in the activities of the controlled person which are claimed to be violative of the securities laws.
 
 
 13
 Legislative history reveals that the Senate and the House had advocated different versions of the standard that should govern controlling persons. The House proposed that the standard should be a "fiduciary standard," which would require a duty of due care. (H.R.Rep. No. 85, 73d Cong., 1st Sess. 5 (1933); H.R.Rep. No. 152, 73d Cong., 1st Sess. 27 (1933).) On the other hand, the Senate proposed an "insurer's liability" (S.Rep. No. 47, 73d Cong., 1st Sess. 5 (1933), the Fletcher Report). Congress enacted the House version, rejecting the insurer concept.
 
 
 14
 The Second and Third Circuits have concluded that the term "controlling persons" requires proof not only of a relationship between the controlling and the controlled persons which gives the former direct or indirect influence over the policy and decision-making process of the latter, but also that the controlling person was a culpable participant in the activities of the controlled person whose conduct is claimed to violate the securities laws. (Gordon v. Burr (2d Cir. 1974) 506 F.2d 1080, 1085; Lanza v. Drexel & Co. (2d Cir. en banc 1973) 479 F.2d 1277, 1299; Rochez Brothers, Inc. v. Rhoades (3rd Cir. 1975) 527 F.2d 880.) In the absence of prima facie proof of power to influence together with culpable participation, the person charged with secondary liability under section 20(a) is not obliged to come forward with any evidence to vindicate his good faith. (Gordon v. Burr, supra, 506 F.2d at 1086; Rochez Brothers, Inc. v. Rhoades, supra, 527 F.2d at 891.) We need not decide in this case whether, like the Second and Third Circuits, we will require that the person who has participated in the acts of another in violation of the securities laws must be "culpable." It is enough to dispose of this case to hold that Hutton cannot be a "controlling person" within the meaning of section 20(a) because it was not a participant in Schwager's activities which are claimed to violate the securities laws. Hutton simply did nothing. We agree with the Third Circuit's observation in Rochez Brothers, Inc. v. Rhoades, supra, that "(c)ourts have been unwilling to extend vicarious liability where the secondary defendant's activity is mere inaction." (527 F.2d at 889.)
 
 
 15
 Because we have concluded that from the undisputed facts Hutton was not a controlling person within the meaning of section 20(a), we do not reach the question whether any triable issue of fact was presented in respect of Hutton's good faith defense.
 
 
 16
 AFFIRMED.
 
 
 
 *
 Honorable Robert Firth, United States District Judge, Central District of California, sitting by designation