**Lucille KERSH, et al., Plaintiffs,**

**v.**

**The GENERAL COUNCIL OF THE ASSEMBLIES OF GOD, et al., Defendants.**

**No. C–81–2734 TEH.**

United States District Court, N. D. California.

March 12, 1982.

Garry Koenigsberg, Law Offices of Timothy Fine, San Francisco, Cal., for plaintiffs.

Bonnie R. Cohen, Bronson, Bronson & McKinnon, San Francisco, Cal., for defendant Assemblies of God, No. Calif. and Nev. Dist.

Richard H. Harris, Jr., Hancock, Rothert & Bunshoft, San Francisco, Cal., for defendant Gen. Council Assemblies of God.

## ORDER AND OPINION DENYING DEFENDANTS' MOTIONS TO DISMISS

HENDERSON, District Judge.

### I. Introduction

The instant suit is brought as a class action on behalf of all persons who deposited money in the Christian Life Center (CLC) Trust Fund. Plaintiffs allege various federal securities and common law violations in connection with the operation of the CLC Trust Fund. Defendants in this action are part of the Assemblies of God hierarchy, of which the CLC is a member church. As alleged in the complaint, defendant General Council of the Assemblies of God (General Council) is at the top of the church organization's hierarchy. Defendant Assemblies of God Northern California and Nevada District Council (District Council) is below the General Council within the church hierarchy, but allegedly has power over local churches, including CLC, in Nevada and Northern California. CLC is a defendant in an action not before this Court and is not named as a party to the instant lawsuit.

Defendants' previous motions to dismiss were granted following a November 23, 1981 hearing before the Court. The November 24 Order granting the motions gave the plaintiffs leave to amend their complaint to allege scienter. The plaintiffs allege at Paragraph 13 of their amended complaint that the defendants acted recklessly in failing to supervise CLC's operation of its Trust Fund. The motions currently before the Court constitute renewed efforts by the defendants to dismiss the plaintiffs' complaint.

The renewed motions to dismiss came on for hearing before the Court on Monday, March 8, 1982. Having had the benefit of well written briefs and extensive oral argument, and having fully considered the positions of the parties, the Court has determined that defendants' motions must be denied.

The federal securities law provision at issue here and on which the plaintiffs' federal claims for relief are partially based is Section 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78t(a):

Every person who, directly or indirectly, controls any person liable under [Rule 10b-5] shall also be liable jointly and severally ... to any person to whom such

controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation . . .

The plaintiffs contend that failure to supervise can be a basis of liability under this control liability statute. Defendants dispute this contention, claiming that control person liability cannot be imposed absent the defendants' knowledge of and participation in the underlying violation. Thus, defendants contend that, unless they are alleged both to have known about and to have participated in operation of the CLC Trust Fund, they cannot be liable as control persons for the securities violations resulting from operation of the Trust Fund.

## II. *Clarification and Amendment of the November 24, 1981 Order with Respect to Alter Ego Liability*

Before discussing the issue of control liability, we note that the amended complaint, like the original complaint in this action, contains an allegation of alter ego liability. Amended Complaint ¶ 16. In their papers addressed to the earlier motions to dismiss, the parties argued strenuously over whether Section 20(a) precludes using alter ego liability as a basis of liability for federal securities law violations. At the March 8 hearing on the current motions, plaintiffs' counsel indicated that he understood the Court's previous dismissal order as rejecting this theory of liability under the federal securities laws. The Court's November 24 Order should not be so understood, and is hereby amended to clarify the status of plaintiffs' federal claims.

■ Plaintiffs allege that the defendants are the alter ego of CLC. Defendants contended in their earlier motion papers that alter ego liability is a form of secondary liability and, as such, is preempted as a basis for federal securities law violations by Section 20(a) of the 1934 Securities and Exchange Act, 15 U.S.C. § 78t, concerning control person liability. Plaintiffs responded that alter ego liability is not secondary liability, but rather substitutes one party for another on the ground that the party substituted for is a mere corporate shell.

No cases directly on point have been brought to the attention of the Court, nor discovered as a result of the Court's own research. Defendants rely on the Ninth Circuit rule that liability for federal securities law violations under a theory of *respondeat superior* is precluded by Section 20(a). *Christoffel v. E. F. Hutton & Co., Inc.,* 588 F.2d 655, 668 (9th Cir. 1978); *Kamen & Co. v. Paul H. Aschkar & Co.,* 382 F.2d 689, 696-697 (9th Cir. 1967). The rationale behind this rule is that under Section 20(a), a controlling person has defenses of good faith and non-participation in the violating conduct that are unavailable under the strict liability theory of *respondeat superior* and related agency principles. *Christoffel, supra,* 588 F.2d at 668. Defendants contend that alter ego liability is simply a legal tool for holding one entity strictly liable for the acts of another and thus is a form of secondary liability precluded by Section 20(a) under the rationale of the Ninth Circuit cases.

According to 6 Witkin, *Summary of California Law: Corporations* § 5, the doctrine of alter ego liability is one under which a court may disregard the corporate entity and treat the acts of the corporation as if they were done by the individuals or controlling corporation lying behind the corporate shell. The issue is whether, under the particular facts presented and for the purpose of the case *sub judice* only, the corporate entity should be disregarded and liability imposed on those otherwise protected from liability by the existence of a corporation. *Id.*

So viewed, alter ego liability is not the strict liability with which the Ninth Circuit was concerned in *Christoffel* and *Kamen.* Rather it is a substitution of parties within the Rule 10b-5 framework. Thus, assuming that the plaintiffs can show that the defendants should be treated as hiding behind a corporate shell under an alter ego theory, defendants would still have available to them the defenses generally available to parties under Rule 10b-5. Strict secondary liability would not be imposed.

In light of this analysis, the Court's November 24 Order of dismissal for failure to allege scienter need not and should not be interpreted as a rejection of a federal securities violation claim based on allegations of alter ego liability. Scienter is an essential element of an allegation of violation of Rule 10b–5, and is satisfied by an allegation of either knowledge, *Ernst and Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), or recklessness, *Nelson v. Serwold*, 576 F.2d 1332, 1337 (9th Cir. 1978), *cert. denied*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978). As the plaintiffs conceded in their opposition to the earlier dismissal motions, scienter was not pled in the original complaint with respect to the named defendants, as opposed to CLC. Under the logic of alter ego liability for securities violations as discussed above, scienter of the party sought to be held liable would appear to be required. In any event, the Court interpreted the plaintiffs' concession that scienter was not adequately pled in the original complaint as going to the alter ego allegations as well as to the control person allegations. In light of the filing of the amended complaint alleging recklessness, the plaintiffs are thus free to pursue their theory of alter ego liability for federal securities violations.

The absence of controlling authority concerning the viability of alter ego liability in light of Section 20(a) and the holdings in the *Christoffel* and *Kamen* cases make this a close question. Reasonable arguments can be and have been made by both sides. As will appear from the following discussion, the issues raised in connection with the plaintiffs' allegations of control person liability are no more easily resolved.

### III. *Control Person Liability*

As indicated above, the defendants contend that control person liability under Section 20(a) cannot be imposed absent allegations of the defendants' knowledge of and actual participation in the underlying securities violation. The structure of Section 20(a), as quoted above at pages 495–496 of this Order imposes liability on controlling persons *unless* good faith and the absence of direct or indirect participation in the violating transaction are shown. Thus the issue of actual participation in the violating conduct appears to be a matter raised by defense rather than by the allegations of the complaint. At least one court has so held. *Stern v. American Bankshares Corp.*, 429 F.Supp. 818, 824 (E.D.Wis.1977).

Despite the structure of the statute, the defendants contend that allegations of mere inaction, such as the plaintiffs' allegation of defendants' failure to supervise CLC—the liable party under Rule 10b–5—are insufficient to state a claim under Section 20(a). Defendants rely on *Christoffel v. E. F. Hutton & Co., Inc., supra*, 588 F.2d 665 (9th Cir. 1978) for the proposition that a plaintiff must plead and prove the defendant's culpable participation in the underlying securities violation in order to establish a claim of control person liability.

In *Christoffel* the Ninth Circuit held that one cannot be a controlling person within the meaning of Section 20(a) unless s/he was a participant in the activities that are claimed to violate the securities laws. 588 F.2d at 669. The context of the *Christoffel* holding, however, raises some doubts as to its applicability under the facts alleged in this case.

In *Christoffel*, the plaintiff conceded that the defendant against whom control liability was asserted had no power to control the activities of the person who was primarily liable for the securities violation. *Id.* at 668. The plaintiffs here, on the other hand, allege that the defendants had both the power and the duty to control CLC's fundraising activities. Amended Cmplt. ¶ 12(h).

The allegations by the plaintiffs here of a duty on the defendants' part to control CLC takes on added significance in light of the Ninth Circuit's discussion in *Christoffel* of the legislative history of Section 20(a). In enunciating the requirement of some kind of participation by the controlling person in the activities of the controlled person which are claimed to be violative of the securities laws, the Ninth Circuit noted that the House and the Senate advocated different

standards for determining who is a controlling person under Section 20(a).

The House proposed that the standard should be a 'fiduciary standard,' *which would require a duty of due care.* [Citation omitted] On the other hand, the Senate proposed an 'insurer's liability' [citation omitted]. Congress enacted the House version, rejecting the insurer concept.

588 F.2d at 668 (emphasis added). As noted, here, unlike *Christoffel*, the plaintiffs have alleged the existence of a duty of due care owing to the plaintiffs.

In a case decided prior to *Christoffel*, the Ninth Circuit held that failure to supervise can be a basis for Section 20(a) liability where a duty to supervise exists.[1] *Hecht v. Harris Upham Co.*, 430 F.2d 1202, 1210 (9th Cir. 1970). The *Hecht* case is not mentioned in *Christoffel*, a not surprising omission given that there was no allegation of a duty to supervise in the latter case. In light of the absence of an allegation of duty in *Christoffel* and the critical importance attached to that fact in the Ninth Circuit's analysis of that case, we are not prepared to conclude, despite defendants urging, that *Christoffel* overruled *Hecht* by implication.

Consistent with the foregoing analysis, we conclude that allegations of reckless non-feasance are sufficient to state a claim of control person liability under Section 20(a) where allegations of a duty of care have been made.

### IV. *Certification of Appropriateness of Interlocutory Appeal Under 28 U.S.C. § 1292(b)*

It is clear from the preceding discussion that even if the defendants were to prevail on their motions to dismiss for failure to allege control person liability, a federal securities claim under an alter ego theory would remain. The Court is cognizant, however, that the issues raised by both the alter ego allegations and the Section 20(a) allegations are difficult questions of first impression in this Circuit and concern controlling questions of law in this case. The absence of directly controlling authority, viewed in light of existing case law, gives rise, as the extensive briefing attests, to substantial ground for difference of opinion on these issues. Furthermore, given that the plaintiffs' other claims are pendent state claims, if defendants were to prevail on appeal, the entire lawsuit would be dismissed for lack of subject matter jurisdiction. Thus, an immediate appeal from this Order denying defendants' motions may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b).

### V. *Conclusion*

 Finally, we note that motions to dismiss are disfavored and should not be granted unless it appears certain that the plaintiffs would not be entitled to recover under any state of the facts that could be proved in support of their claim. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). For purposes of such a motion, the complaint must be construed in the light most favorable to the plaintiffs. *McKinney v. DeBord*, 507 F.2d 501, 503 (9th Cir. 1974). This standard is applicable in cases involving allegations of 10b–5 violations. *See Fuls v. Shastina Properties, Inc.*, 448 F.Supp. 983, 986 (N.D.Cal.1978).

Thus our rulings reflect no opinion as to the likelihood of plaintiffs' success on the merits of their federal securities claims. In this connection, the Court expects that at the April 26 status conference in this case, the parties will be prepared to discuss the appropriateness and feasibility of limiting initial discovery to the alter ego and control person allegations of the complaint in anticipation of a summary judgment motion by the defendants in connection with the fed-

---

1. Whether such a duty exists is a question to be determined under the "flexible duty" standard articulated in *Zweig v. Hearst Corp.*, 594 F.2d 1261, 1268 (9th Cir. 1979). *See Spectrum Financial Companies v. Marconsult, Inc.*, 608 F.2d 377, 381 (9th Cir. 1979), *cert. denied*, 446 U.S. 936, 100 S.Ct. 2153, 64 L.Ed.2d 788 (1980). The complaint contains sufficient allegations of facts giving rise to a duty to survive a motion to dismiss. Amended Complaint ¶¶ 12(f) and 12(h).

eral securities claims. The appropriateness of such a limitation will of course depend in part on the status of any interlocutory appeal of the instant Order.

For the foregoing reasons,

IT IS HEREBY ORDERED that defendants' motions to dismiss are denied.