819 F.2d 904
 Fed. Sec. L. Rep. P 93,276
Marshall J. ORLOFF; Susan L. Orloff; Karen J. Orloff;
Eric R. Orloff; Lisa Orloff; Tobias Orloff; Mark Orloff;
Jeremy Orloff; Leah Orloff; the Surgical Education and
Research Foundation, Plaintiffs-Appellants,
v.
Sheldon ALLMAN, et al., Defendants,
Edward Allen; E. Allen Development Corporation; Mitchell
Stein, Defendants- Appellees.
 No. 86-6451.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 7, 1987.
Decided June 12, 1987.
 
 Lawrence Lieberman, Beverly Hills, Cal., for plaintiffs-appellants.
 Leighton M. Anderson and Judith K. Otamura-Kester, Morgan, Lewis & Bockins, Los Angeles, Cal., for defendant-appellee Edward Allen.
 Appeal from the United States District Court for the Central District of California.
 Before WALLACE, BEEZER and HALL, Circuit Judges.
 BEEZER, Circuit Judge:
 
 
 1
 Members of the Orloff family appeal the district court's grant of summary judgment releasing Edward Allen from liability in the Orloff's securities fraud action. The Orloffs contend that Allen is liable as a controlling person, an aider and abettor, or as the alter ego of certain parties who are still defendants in the case. The district court concluded that the Orloffs had failed to make a showing on any of these theories sufficient to survive summary judgment. We affirm.
 
 Facts
 
 2
 In 1981, the Orloffs invested in a real estate development scheme promoted by Sheldon Allman in association with several other individuals and business entities. In theory, Allman and his associates would seek out and purchase attractive investment properties, develop them as appropriate, and arrange for resale. The investors would buy a part interest in the properties and share in the profits, which were represented as averaging 30%. In fact, it appears that by 1982 Allman and his associates were forced to solicit more and more investments to meet their obligations. This pyramid soon collapsed and the Orloffs allegedly lost over $200,000.
 
 
 3
 Defendant-appellee Edward Allen is a Canadian citizen residing in Arizona. He is the principal owner of Allen Group, Ltd., a Canadian corporation. He is also the president of E. Allen Development Corporation ("Allen Corp."), a wholly owned subsidiary of Allen Group, Ltd. Allen Corp. is a general partner of Double A Development; the other general partner is AOC-Arizona, which is itself a partnership formed by Sheldon Allman and others.
 
 
 4
 Allen is in the business of finding and developing real estate. In 1980, he caused Allen Corp. to join Double A Development, with the understanding that Allen Corp. would locate and develop attractive properties and AOC-Arizona would provide development capital. The partnership agreement gave each partner the power to borrow money on behalf of the partnership, but consent of both partners was required to borrow over $10,000. Allen claims he did not inquire where AOC-Arizona got the money used by Double A Development, and he did not know that private investors were involved until early 1982 when AOC-Arizona became unable to meet its current obligations.
 
 
 5
 In 1982, the Orloffs brought an action in federal district court alleging that Allman, Allen and others had violated the federal securities laws by failing to register the investment contracts purchased by the Orloffs and by misrepresenting the risks of the investment. The complaint included several pendent state claims sounding generally in fraud or negligence. After extensive discovery, default judgments were entered against Sheldon Allman and two others. Certain other defendants were apparently dismissed.
 
 
 6
 In 1985, the district court granted a motion for summary judgment and dismissed Allen from the case. The Orloffs appealed, but their appeal was dismissed for lack of jurisdiction, there being no final judgment in the district court. On September 22, 1986, the district court reissued its summary judgment along with a certificate of finality conforming to Fed.R.Civ.P. 54(b). The Orloffs timely appealed, alleging that Allen's close ties to other defendants (such as to Allman) made summary judgment improper.
 
 Analysis
 
 7
 This court reviews a grant of summary judgment de novo. Kersh v. General Council of the Assemblies of God, 804 F.2d 546, 548 (9th Cir.1986) ("Kersh II "). Summary judgment is appropriate if, after sufficient time for discovery, a party fails to make a showing sufficient to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, --- U.S. ----, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).
 
 
 8
 A. Controlling Person Liability Under Federal Law
 
 
 9
 The Securities Act of 1933 provides that a person who "controls" violators of the Act is jointly and severally liable with those violators "unless the controlling person had no knowledge of or a reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist." 15 U.S.C. Sec. 77o. Similarly, the Securities Exchange Act of 1934 provides that controlling persons are jointly and severally liable with violators under their control "unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. Sec. 78t(a).
 
 
 10
 Recent Ninth Circuit cases indicate that, to establish Allen's liability as a controlling person with respect to Allman or any other defendant, the Orloffs must show that: "(1) the defendant [Allen] had actual power or influence over the alleged controlled person, and (2) the defendant was a culpable participant in the alleged illegal activity." Buhler v. Audio Leasing Corp., 807 F.2d 833, 835 (9th Cir.1987); Kersh II, 804 F.2d at 549.[1] The district court granted summary judgment on the ground that the Orloffs had failed to establish a genuine dispute of material fact concerning Allen's "culpable participation."
 
 
 11
 On appeal, the Orloffs renew their efforts to show that Allen was a culpable participant in the federal securities violations alleged in their complaint: sale of unregistered securities (Count One), misrepresentation in the offer or sale of a security (Counts Two, Three and Four), and failure to register as an investment adviser (Count Five). In particular, the Orloffs allege the following:
 
 
 12
 1. Allen acted personally on behalf of Allen Corp., which was a general partner of Double A Development, which in turn owned and managed the properties involved in the fraudulent investment scheme.
 
 
 13
 2. Allen received as personal compensation a finder's fee for each investment property he located for Double A. Some of these fees exceeded $25,000.
 
 
 14
 3. Some of the Orloffs' investments were influenced, in part, by representations that properties in Arizona would be managed by Allen Corp., which served as Allman's "man on the scene in Arizona." The Orloffs reasonably assumed that the principals of Allen Corp., whom they never met, were knowing participants in the investment scheme.
 
 
 15
 4. In early 1982, when Allen claims he discovered that Double A had been funded by private investors, Allen caused Allen Corp., acting as a partner of Double A, to deed Double A's properties to Essay Investments, an entity controlled by Allman. Allen's stated purpose was to force Allman to deal with the failing investment scheme by himself.
 
 
 16
 Viewed in the light most favorable to the Orloffs, these allegations support an inference that Allen had at least potential control over some aspects of the investment scheme and that the Orloffs reasonably believed that Allen was a culpable, knowing participant. But they are also consistent with Allen's affidavit that he was responsible for finding properties, not for raising money, and that he did not know where Allman got the money to finance Double A until 1982. The Orloffs have presented no evidence that Allen actually knew (or culpably refused to see) that fraudulent sales of unregistered securities were being made. Cf. Burgess v. Premier Corp., 727 F.2d 826, 832-33 (9th Cir.1984) (corporate director was not a culpable participant in the acts of his corporation, where he had no day to day involvement in corporate business and no experience in that business).
 
 
 17
 The Orloffs argue at length that they should not have to show Allen's knowing culpability, for two reasons. First, they suggest that Allen may be found liable for his inaction, his failure to investigate and exercise control over Allman and the others, citing Kersh v. General Council of the Assemblies of God, 535 F.Supp. 494 (N.D.Cal.1982) ("Kersh I "). This theory of "indirect participation" was explained more fully in Buhler and Kersh II, and it provides no comfort to the Orloffs. It is applicable only where the control person can be analogized to a broker-dealer, who has a statutory duty to supervise his agents. See Buhler, 807 F.2d at 836 (describing the doctrine as the "broker-dealer rule"); Kersh II, 804 F.2d at 550 (listing attributes characteristic of a broker-dealer). Even if Allen can be analogized to a broker-dealer, the Orloffs must still show that his inaction was culpable. See Buhler, 807 F.2d at 836, n. 6; Kersh II, 804 F.2d at 553, n. 6. They have failed to do so.
 
 
 18
 Second, the Orloffs recommend that this court adopt the reasoning of the Eighth Circuit in Metge v. Baehler, 762 F.2d 621 (8th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The Metge court held that allegations of controlling person liability can survive summary judgment even without a showing that the controlling person was a culpable participant in the alleged securities violation. According to the Eighth Circuit, it is enough to allege that the controlling person could have controlled the specific transaction that violated the securities laws. "[G]ood faith and lack of participation are affirmative defenses in a controlling person action." Metge, 762 F.2d at 631.
 
 
 19
 Metge is inconsistent with the law of this circuit as set forth in Buhler and Kersh II. We affirm the district court's decision on controlling person liability, on the ground that the Orloffs failed to show Allen's culpable participation in the frauds perpetrated by Allman.[2]
 
 
 20
 B. Aiding and Abetting Liability Under Federal and State Law
 
 
 21
 The parties agree that the test of Harmsen v. Smith, 693 F.2d 932 (9th Cir.1982), cert. denied, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983), governs this issue. Harmsen sets forth the elements of a cause of action for aiding and abetting a violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b) (1982): "(1) the existence of an independent primary wrong; (2) actual knowledge by the alleged aider and abettor of the wrong and of his or her role in furthering it; and (3) substantial assistance in the wrong." Harmsen, 693 F.2d at 943; see also SEC v. Rogers, 790 F.2d 1450, 1460 (9th Cir.1986) (applying the Harmsen test to allegations under the Securities Act of 1933).
 
 
 22
 It appears that California law is even stricter than the Harmsen test. Cal.Corp.Code Sec. 25504.1 restricts liability for aiding and abetting a state securities violation to cases where it is shown that the defendant had an "intent to deceive or defraud." See also Koehler v. Pulvers, 614 F.Supp. 829, 844 (S.D.Cal.1985) (citing the statute).
 
 
 23
 Even the Harmsen standard requires the Orloffs to prove that Allen had actual knowledge of the fraudulent investment scheme and that he substantially assisted that fraud. The Orloffs again rely on the four factual allegations listed earlier to demonstrate Allen's close ties to the fraudulent scheme. We have already concluded that those allegations fall short of showing knowing culpability in the context of controlling person liability. We reach the same conclusion here.
 
 
 24
 C. Alter Ego Liability Under Federal and State Law
 
 
 25
 The Orloffs argue that Allen should be found liable as an alter ego of Allen Corp., which is still a defendant in their action, under both federal and state securities laws. If they are correct, then summary judgment in Allen's favor was improper.
 
 
 26
 As a preliminary matter, it must be determined whether the alter ego doctrine (also called "piercing the corporate veil" and "disregarding the corporate entity") is applicable in securities cases at all. This issue has been seldom discussed, perhaps because the "control person" and "aiding and abetting" provisions in the federal and state securities laws usually make the alter ego doctrine superfluous. Apparently only one federal case has considered it. In Kersh I, 535 F.Supp. 494, 496-97, the defendants argued that 15 U.S.C. Sec. 78t (the control person provision of the 1934 Act) preempted the common law alter ego doctrine. They relied on Christoffel v. E.F. Hutton & Co., 588 F.2d 665, 667 (9th Cir.1978), for the proposition that section 78t supplants the common law doctrine of respondeat superior (vicarious liability of an employer). See also Hatrock v. Edward D. Jones & Co., 750 F.2d 767, 777 (9th Cir.1984). The Kersh I court rejected this argument, distinguished Christoffel and held that the alter ego doctrine could be applied in a federal securities case. The court reasoned that vicarious liability, which can be imposed without regard to an employer's state of mind, was indeed precluded by the deliberately narrow scope of the securities laws. Kersh I, 535 F.Supp. at 496; cf. Buhler, 807 F.2d at 835-36 n. 4 ("the securities laws were meant to impose liability only on culpable parties"). Piercing the corporate veil imposes no vicarious liability, however, it merely effects a "substitution of parties." Kersh I, 535 F.Supp. at 496. The new defendant must still be shown to have had the proper mental state before liability can be imposed (e.g. "scienter" under 15 U.S.C. Sec. 78j). See also SEC v. Elmas Trading Corp., 620 F.Supp. 231, 233-34 (D.Nev.1985), aff'd, 805 F.2d 1039 (9th Cir.1986) (applies the alter ego doctrine to place certain business entities in receivership during investigation of federal securities violations).
 
 
 27
 In other circuits, even vicarious liability theories coexist with securities law. See, e.g., Commerford v. Olson, 794 F.2d 1319, 1322-23 (8th Cir.1986); Paul F. Newton & Co. v. Texas Commerce Bank, 630 F.2d 1111, 1118 (5th Cir.1980); cf. Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 154, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972) (holding bank jointly and severally liable with its employees, without explanation). Our research discloses no California cases discussing the survival of vicarious or alter ego liability in a securities context. In what follows, we assume for purposes of argument that the Kersh I court was correct and the alter ego doctrine is available to the Orloffs under federal and state law.[3]
 
 
 28
 The California alter ego doctrine is reasonably clear and recognized by both parties. It applies where:
 
 
 29
 (1) such a unity of interest and ownership exists that the personalities of the corporation and individual are no longer separate, and (2) an inequitable result will follow if the acts [giving rise to liability] are treated as those of the corporation alone.
 
 
 30
 RRX Industries, Inc. v. Lab-Con, Inc., 772 F.2d 543, 545 (9th Cir.1985); Automotriz Del Golfo De California, S.A. De C.V. v. Resnick, 47 Cal.2d 792, 797, 306 P.2d 1, 4 (1957). The kind of "inequitable result" that makes alter ego liability appropriate is an abuse of the corporate form, such as under-capitalization or misrepresentation of the corporate structure to creditors. See RRX Industries, 772 F.2d at 546; United States v. Healthwin-Midtown Convalescent Hosp., 511 F.Supp. 416, 418-19 (C.D.Cal.1981), aff'd, 685 F.2d 448 (9th Cir.1982); American Home Ins. Co. v. Travelers Indem. Co., 122 Cal.App.3d 951, 175 Cal.Rptr. 826, 834 (1981); Ivy v. Plyler, 246 Cal.App.2d 678, 54 Cal.Rptr. 894 (1966). No specific finding of bad faith is required if such an abuse is found. RRX Industries, 772 F.2d at 546; cf. United States v. Standard Beauty Supply Stores, 561 F.2d 774, 777 (9th Cir.1977) (California alter ego doctrine is applied where conduct "amounting to bad faith" makes it inequitable for the defendant to hide behind the corporate veil).
 
 
 31
 As the district court noted, the Orloffs have not claimed that Allen Corp. is undercapitalized or otherwise incapable of satisfying a judgment. Nor could Allen have misled them concerning the corporate structure of Allen Corp., for they admit they never had any contact with Allen. Nor is it plausible to suggest that Allen hid behind his corporation in bad faith. The fact that an incorporator wishes limited liability is not, by itself, sufficient reason to pierce the corporate veil. See Hiehle v. Torrance Millworks, Inc., 126 Cal.App.2d 624, 272 P.2d 780, 783 (1954). We affirm the district court's judgment despite the Orloffs' allegations of alter ego liability under state law.
 
 
 32
 Federal law concerning the alter ego doctrine is less clear than state law. See Note, Piercing the Corporate Law Veil: The Alter Ego Doctrine Under Federal Common Law, 95 Harv.L.Rev. 853 (1982). Supposing the doctrine to be available in a federal securities case, the federal court must first determine the content of the doctrine. It may borrow a state alter ego doctrine or appeal to federal common law. Cf. United States v. Kimbell Foods, Inc., 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979); Note, 95 Harv.L.Rev. at 859-60. To decide, the court must determine, as a matter of federal law, whether the federal interest at stake requires a uniform national alter ego rule and whether application of a state rule would frustrate specific objectives of federal law. Kimbell Foods, 440 U.S. at 728, 99 S.Ct. at 1458; Note, 95 Harv.L.Rev. at 861-64.
 
 
 33
 If the state (California) rule is chosen, the federal claim may be settled as explained above. If a federal rule is chosen, the outcome should be the same. Accordingly, we need not decide which rule is appropriate. This court has described the federal common law of alter ego liability in these terms:
 
 
 34
 To determine whether stockholders are personally liable for the debts of their corporations, this court relies on three factors: the amount of respect given to the separate identity of the corporation by its shareholders, the fraudulent intent of the incorporators, and the degree of injustice visited on the litigants by recognition of the corporate entity.
 
 
 35
 Laborers Clean-Up Contract Admin. Trust Fund v. Uriarte Clean-Up Service, Inc., 736 F.2d 516, 524 (9th Cir.1984) (citing Seymour v. Hull & Moreland Eng'g, 605 F.2d 1105, 1111 (9th Cir.1979)).
 
 
 36
 Under the first prong of this test, there is no evidence that Allen Corp. failed to keep adequate records or that Allen mingled personal and corporate funds. See Laborers Clean-Up, 736 F.2d at 524. Under the second prong, there is no evidence that Allen had any fraudulent intent when he incorporated Allen Corp. Id. Under the third prong, there is no evidence that Allen Corp. is undercapitalized. Id. at 524-25. Accordingly, we affirm the district court's judgment despite the Orloffs' allegations of alter ego liability under federal law.
 
 
 37
 AFFIRMED.
 
 
 
 [1]
 Buhler and Kersh II rely upon Christoffel v. E.F. Hutton & Co., 588 F.2d 665, 668-69 (9th Cir.1978), which overlooked prior circuit law. See Safeway Portland Employees' Fed. Credit Union v. C.H. Wagner & Co., 501 F.2d 1120, 1124 (9th Cir.1974) (defendant bears the burden of disproving culpable participation under the 1933 Act). As the following discussion shows, however, allocation of the burden of proof does not affect the outcome in this case. See note 2, infra
 
 
 [2]
 As noted earlier, Ninth Circuit law before 1974 was consistent with Metge. Even if Allen had the initial burden of disproving culpable participation, however, his affidavit shifted the burden to the Orloffs to produce evidence raising a genuine issue of fact for trial. See Celotex Corp. v. Catrett, --- U.S. ----, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting). The Orloffs failed to discharge this burden, so the district court's grant of summary judgment was proper
 
 
 [3]
 The parties dispute whether the Orloffs raised the alter ego issue below. The district court thought the issue had been raised and ruled on it