Peter GERSHON, et al., Plaintiffs,

v.

WAL–MART STORES, INC.
et al., Defendants.

No. 94 Civ. 0428 (SS).

United States District Court,
S.D. New York.

Sept. 29, 1995.

Milberg Weiss Bershad Hynes & Lerach, Steven G. Shulman, Edith M. Kallas, New York City, Kaufman Malchman Kirby Squire, Jeffrey H. Squire, Daniel R. Robbins, New York City, Abbey & Ellis, Jill S. Abrams, New York City, for Plaintiffs.

Kramer, Levin, Naftalis, Nessen, Kamin & Frankel, Gary P. Naftlais, Michael S. Ober-

man, J. Michael Mayerfeld, New York City, for Defendant Wal–Mart Stores Inc.

## OPINION AND ORDER

SOTOMAYOR, District Judge.

Defendant Wal–Mart Stores, Inc. ("Wal–Mart") moves for an order pursuant to Fed. R.Civ.P. 12(b)(6) and 9(b) dismissing, as against it, plaintiffs' Consolidated and Amended Class Action Complaint (the "Amended Complaint").[1] For the reasons discussed below, the motion is **GRANTED.**

## BACKGROUND

This litigation arose out of the March, 1994 bankruptcy of The Gitano Group, Inc. ("Gitano"), a New York-based apparel manufacturer and wholesaler. Plaintiffs in this action are a class of Gitano shareholders, comprising all persons who owned Gitano common stock between April 5, 1993 and January 24, 1994 (the "Class Period").

Defendant Wal–Mart Stores, Inc. is an Arkansas-based retailer that was Gitano's largest customer, accounting for approximately one-third of Gitano's net sales during 1992, up from 18% in 1989. Am.Compl. at ¶ 66.[2]

For a year prior to filing for bankruptcy protection, Gitano experienced operating difficulties, reporting a $140 million loss in its annual report for 1992. The same annual report disclosed that Gitano was under investigation for criminal violations of U.S. Customs laws. At the time the 1992 annual report was published on May 19, 1993, Gitano also knew, but did not disclose, that Wal–Mart had a policy of discontinuing all purchases from any vendor found guilty of such customs violations. Am.Compl. ¶ 78(iii).[3]

On December 16, 1993 federal prosecutors announced that Gitano and three of its former top executives had pled guilty to felony charges arising from a scheme to evade customs laws. The triggering event to the Gitano bankruptcy was the announcement by Gitano on January 24, 1994 that, due to Wal–Mart's policy regarding customs violators, Wal–Mart would no longer purchase Gitano merchandise.

Plaintiffs' claim against Wal–Mart advances the novel argument that Wal–Mart is liable for securities fraud because of its failure to warn Gitano stockholders that Gitano would likely suffer serious adverse consequences as a result of Wal–Mart's "no business with felons" policy (hereinafter, the "Customs Policy").

The Amended Complaint makes a single claim against Wal–Mart: it violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated by the Securities and Exchange Commission thereunder.[4] Am.Compl. ¶ 123–131. Importantly,

---

1. Various class action law suits were commenced against Gitano and related or affiliated parties. All the matters were consolidated before me. The vast majority of the class action litigation, with the claim against Wal–Mart an exception, was resolved by way of a Stipulation of Settlement dated July 22, 1994 and a subsequent Final Judgment and Order of Dismissal dated Oct. 31, 1994.

2. Although the Amended Complaint does not contain figures setting forth the extent of Gitano's sales to Wal–Mart during the Class Period, measured as a proportion of Gitano's total net sales, the parties agree that Gitano was, during the Class Period, Gitano's largest customer. Mem. of Def. Wal–Mart Stores, Inc. in Support of Mot. to Dismiss at 3.

3. I have presumed all facts in the Amended Complaint to be true, and have drawn all inferences in the plaintiffs' favor as I must for purposes of this motion. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91

L.Ed.2d 202 (1986); *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989).

4. Section 10(b) of the 1934 Act (15 U.S.C. § 78j) prohibits the use "in connection with the purchase or sale of any security … [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe."

Rule 10b–5 (17 C.F.R. § 240.10b–5) states in pertinent part, that it shall be unlawful for any person, directly or indirectly,
(1) To employ any device, scheme or artifice to defraud,
(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made in light of the circumstances under which they were made, not misleading, or
(3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of a security.

the Amended Complaint makes no claim under Section 20(a) of the Exchange Act, which enlarges the boundary of liability to "[e]very person who, directly or indirectly, controls" the issuer.[5]

The claim is supported by an allegation that Wal–Mart owed a duty of disclosure to Gitano shareholders, because of its "close and longstanding business relationship with Gitano," Gitano's dependency on Wal–Mart for a third of its business, and Wal–Mart's resulting profit from that business. Am. Compl. ¶ 25–28. The plaintiffs also claim that Wal–Mart deliberately concealed the Customs Policy in order to protect the continuity of supply of Gitano products through the Christmas shopping season, which it alleges explains Wal–Mart's six-week delay between the time Gitano pleaded guilty and the date on which Wal–Mart invoked its Customs Policy by cutting off purchases. Am.Compl. ¶ 27, 79.

The offensive conduct Wal–Mart is charged with in this action is that of having remained silent in the face of misleading information made public by Gitano management. Am.Compl. ¶ 79. There is no claim that Wal–Mart was trading in Gitano securities during the Class Period, or that it made any statements itself.[6]

### DISCUSSION

■ A district court's function on a motion to dismiss under Fed.R.Civ.P. Rule 12(b)(6) is to assess the legal feasibility of the complaint. *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir.1991). The issue "is not whether a plaintiff will evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Allegations contained in the complaint must be construed favorably to the plaintiff. *Walker v. New York*, 974 F.2d 293, 298 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993). Dismissal is warranted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ricciuti v. NYC Transit Authority*, 941 F.2d 119, 123 (2d Cir.1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted)).

■ In considering a Rule 12(b)(6) motion, a court must look to: (1) the facts stated on the face of the complaint; (2) documents appended to the complaint; (3) documents incorporated in the complaint by reference; and (4) matters of which judicial notice may be taken. *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1054, 127 L.Ed.2d 375

---

**5.** Plaintiffs assert in their Memorandum of Law that they "have chosen not to plead either pendent state law securities fraud claims or a theory of liability based upon ... Section 20(a) of the Exchange Act of 1934. Nevertheless, plaintiffs may request the Court's permission to do so." Pls.' Mem. of Law at 2 n. 1. I note that plaintiffs did in fact allege in their original complaint that Wal–Mart was "at all relevant times a 'controlling person' of Gitano within the meaning of § 20(a) of the Exchange Act." Original Complaint at ¶ 21(d). Having made and then withdrawn the § 20(a) component, I deny plaintiffs' subsequent request for leave to replead it now, particularly when plaintiffs have not alleged any additional facts supporting a claim that Wal–Mart meets the criteria for "controlling persons." Our circuit and others have narrowly construed that phrase, limiting it to an issuer's large shareholders or agents. Even an issuer's directors have escaped its reach. *See e.g. Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir.1973) (en banc). *See also, Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2994, 125 L.Ed.2d 688 (1993); *Christoffel v. E.F. Hutton &*

*Co.*, 588 F.2d 665 (9th Cir.1978). Mere economic power, which can not even be alleged to be absolute, over an issuer is clearly not sufficient to convert one into a "controlling person." In light of my dismissal of the § 10(a) claim there are no longer any federal issues to which state claims can be pendent and I decline supplemental jurisdiction over such claims.

**6.** The Amended Complaint does allege: "the making of ... untrue statements" by Wal–Mart; that Wal–Mart "issued ... misleading statements"; and "systematic ... misstatement" by Wal–Mart. Am.Compl. at ¶ 125, 126, 127, respectively. The Amended Complaint contains 23 paragraphs detailing "false and misleading statements" by the other defendants, but none are alleged to have been made by Wal–Mart. Am. Compl. 82–105. No facts are alleged to support affirmative misstatements by Wal–Mart. Plaintiffs admits that there were no affirmative statements by Wal–Mart. See Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Dismiss at 3, 4 ("Wal–Mart ... failed to disclose"; "Wal–Mart ... remained silent").

(1994) (citing *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991)). *See also Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir.1993) (same).

The threshold legal issue before me on this motion to dismiss is whether the Amended Complaint alleges any set of facts from which it can be concluded that Wal–Mart owed any duty of disclosure at all to Gitano shareholders or that its actions had any connection to the purchase and sale of securities under Rule 10b–5. I hold it does not.[7]

As the briefs have provided me with no cases on point, I have searched for cases, and consulted the leading treatises, seeking precedent or informed commentary asserting that shareholders of an issuer may hold a company whose only relationship to the issuer is through an arms-length supply contract culpable for the issuer's securities fraud. In the very ample list of categories of business entities having been found liable, either primarily or secondarily, for an issuer's fraud (*see, e.g.,* 5C Arnold S. Jacobs, *Litigation and Practice Under Rule 10b–5* § 66.02[a][ii] (rev. 1995) (listing 35 such categories)), I have found none analogous to Wal–Mart's role in this case. Those few reported cases involving defendants contracting with the issuer are confined to contracts for the purchase by the defendant of the issuer's securities, drawing the nexus of the alleged fraud and the issuer's stockholders much more tightly than is the case here. *See, e.g., Crane Co. v. Westinghouse Air Brake Co.,* 419 F.2d 787 (2d Cir.1969), *cert. denied,* 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970); *Gibson v. Cannon,* 325 F.Supp. 706 (E.D.Pa.1971).

■ I inspect this claim then to determine whether generally applicable principles of disclosure duty recognized within the Rule 10b–5 context could confer upon plaintiffs a cognizable claim. The leading Supreme Court cases which speak to the issue answer in the negative. The dispositive case is *Chiarella v. United States,* 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980) which states: "We hold that a duty to disclose under § 10(b) does not arise from mere pos-

session of nonpublic market information". *Id.* at 235, 100 S.Ct. at 1118. *Chiarella* established the parameters of the disclosure duty by asserting:

First, not every instance of financial unfairness constitutes fraudulent activity under § 10(b). Second, the element required to make silence fraudulent—a duty to disclose—is absent in this case. No duty could arise from petitioner's relationship with seller of the target company's securities, for petitioner had no prior dealings with them. He was not their agent, he was not a fiduciary, he was not a person in whom the sellers had placed their trust and confidence. He was, in fact, a complete stranger who dealt with the seller only through impersonal market transactions.

We cannot affirm petitioner's conviction without recognizing a general duty between all participants in market transactions to forego actions based on material, nonpublic information. *Formulation of such a broad duty, which departs radically from the established doctrine that duty arises from a specific relationship between two parties* ... should not be undertaken absent some explicit evidence of congressional intent.

*Id.* at 232–33, 100 S.Ct. at 1116–17 (citations omitted) (emphasis added).

Even presuming that Wal–Mart was in possession of material non-public information in the form of (i) its Customs Policy and (ii) its intention to discontinue Gitano purchases after the guilty plea, and even if Wal–Mart was a "participant in market transactions" in Gitano stock merely by virtue of its wholesaler-retailer contractual relationship with Gitano (which, for the reasons I set forth in the next paragraph, I do not believe to be the case), it still had no disclosure duty under the *Chiarella* standard because it lacked the requisite fiduciary relationship to Gitano shareholders.

Fresh reiteration of *Chiarella's* validity, and the principle of strictly construing the parameters of § 10(b), comes from *Central*

---

7. Because I dismiss on this threshold issue, I do not reach the issue of whether, having had such a duty of disclosure, Wal–Mart acted with the requisite scienter in failing to disclose.

*Bank of Denver, N.A. v. First Interstate Bank of Denver,* —— U.S. ——, ——, 114 S.Ct. 1439, 1447, 128 L.Ed.2d 119 (1994) (quoting and expressly reaffirming *Chiarella* ) and *In re Time Warner Inc. Sec. Litig.,* 9 F.3d 259, 267 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994) ("[A] corporation is not required to disclose a fact merely because a reasonable investor would very must like to know that fact. Rather, an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts.") *See also Basic Incorporated v. Levinson,* 485 U.S. 224, 239 n. 17, 108 S.Ct. 978, 987 n. 17, 99 L.Ed.2d 194 (1988) ("Silence, absent a duty to disclose, is not misleading under Rule 10b–5").[8]

Plaintiffs' fraud claim also founders because Wal–Mart's conduct did not result in Wal–Mart's reaping profits from trading in Gitano securities. Section 10(b) and Rule 10b–6 require that the proscribed conduct must be "in connection with the purchase or sale of any security" for it to be cognizable. The Amended Complaint conflates Wal–Mart's profits gained in perpetuating a source of supply with ill-gotten gains from securities fraud. The reach of Rule 10b–5 is not so extensive as to grasp all actors whose behavior has a negative impact on the market price of an issuer's securities. "[A]n insider will be liable under Rule 10b–5 for inside trading only where he fails to disclose material nonpublic information *before trading*

*in it* and thus makes 'secret profits.' " *Dirks v. S.E.C.,* 463 U.S. 646, 654, 103 S.Ct. 3255, 3261, 77 L.Ed.2d 911 (1983) (citation omitted) (emphasis added). The Supreme Court has long read the "in connection with" language narrowly. *See, e.g., Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).[9]

In summary, plaintiffs have failed to demonstrate that Wal–Mart had any fiduciary relationship to Gitano stockholders which would give rise to a duty to disclose. As an alternate ground for dismissal, plaintiffs have failed to show that Wal–Mart's action (or inaction) implicated Section 10(b) or Rule 10b–5, as there was no nexus between Wal–Mart and the market for Gitano securities in which the plaintiffs suffered their loss.

### CONCLUSION

For the reasons set forth herein, Wal–Mart's motion to dismiss is **granted** and the Consolidated and Amended Class Action Complaint is **dismissed,** with prejudice. The Clerk of the Court is directed to enter judgment in accordance with this Opinion.

**SO ORDERED.**

8. Plaintiffs urge me to adopt a "flexible duty" test and to find defendant's conduct wanting under such a test. The test was enunciated in *White v. Abrams,* 495 F.2d 724 (9th Cir.1974) and posits that a duty of disclosure can arise due to disparities between the issuer's shareholders and any third party in information about an issuer given: (1) an imbalance in access to information; (2) the benefits derived by defendant from prolonging the fraud; (3) the defendant's awareness of the plaintiff's reliance on the defendant in making investment decisions; and (4) the defendant's role in initiating the sale of securities. Plaintiffs, however, are unable to point to any Second Circuit case embracing this test. In the wake of *Chiarella* and its progeny, I believe the test to have been substantially repudiated, even in the circuit of its birth. *See, e.g., Hollinger v. Titan Capital Corp.,* 914 F.2d 1564 (9th Cir. 1990), *cert. denied,* 499 U.S. 976, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991).

9. *Affiliated Ute Citizens v. U.S.,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) is cited by plaintiffs as authority for foisting upon Wal–Mart the role of fiduciary to Gitano shareholders. In fact, it does the opposite. The fraud claim sustained in *Affiliated Ute* was predicated on the direct purchase and sale by defendants of plaintiffs' securities, to the defendants' advantage and the plaintiffs resulting disadvantage. Indeed, in that case plaintiffs had expressly entrusted defendants with certain brokerage functions. Here, there is no suggestion in the facts before me of anything approaching that level of trust and reliance by Gitano on Wal–Mart, much less the required nexus between market manipulation of an issuer's securities and profit resulting therefrom.