974 F.2d 1341
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ronald P. BRADY; Vincent Lombardo; Allen Larson; Erling
Schlak; Karl Schlak; Henry Jessen; Robert W. Brady;
Terrain, Inc., a North Dakota corporation; Gerner, Inc., a
North Dakota corporation; Triple J Farms, Inc., a Wyoming
corporation, Plaintiffs-Appellants,
v.
DAIRY FRESH PRODUCTS CO., a California corporation;
Sylvester Feichtinger; Escondido Valley Poultry
Association; Demler Farms, Inc., a
California corporation,
Defendants-Appellees.
Ronald P. BRADY, an individual; Robert W. Brady, an
individual; Karl R. Schlak, an individual; Terrain, Inc.,
a North Dakota corporation; Erling O. Schlak, an
individual; Gerner, Inc., a North Dakota corporation;
Henry Jessen, an individual; Evelyn Jessen, an individual;
Triple J Farms, a Wyoming corporation; Allen D. Larson, an
individual; Vincent Lombardo, an individual, Plaintiffs-Appellants,
v.
Bennett LITTLE, an individual; Harold O. Wright, an
individual; Dairy Fresh Products Co., a California
corporation; Demler Farms, Inc., a California corporation;
Sylvester Feichtinger, individually and as Trustee of the
Maria Feichtinger Family Trust; the ESCONDIDO POULTRY
ASSOCIATION, Defendants-Appellees.
 Nos. 89-56023, 90-55507.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 4, 1992.
Decided Sept. 9, 1992.
 
 Before WALLACE, Chief Judge, and JAMES R. BROWNING and FERGUSON, Circuit Judges.
 
 MEMORANDUM
 
 1
 Ronald Brady, Vincent Lombardo, Allen Larson, Erling Schlak, Karl Schlak, Henry Jessen, Evelyn Jessen, Robert Brady, Terrain, Inc., Gerner, Inc., and Triple J Farms, Inc. (the investors) appeal from the district court's summary judgment. The district court granted summary judgment on all counts in favor of Dairy Fresh Products Company (Dairy Fresh), Sylvester Feichtinger, Escondido Valley Poultry Association (Association), and Demler Farms, Inc. (Demler) (collectively defendants). The district court also granted partial summary judgment on several claims in favor of Wright. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We affirm in part and reverse and remand in part.
 
 
 2
 * Wright argues that the investors' notice of appeal is untimely because the district court's summary judgment order was entered as the final judgment on April 21, 1989. The district court's April 21, 1989, order, however, only certifies the summary judgment in favor of the defendants. The final judgment that was subsequently entered by the clerk clearly indicates that the district court was only granting final judgment in favor of the defendants. Therefore, the summary judgment in favor of Wright was not appealable until the district court entered its order on the post-trial motions and the final judgment against Wright on November 14, 1989. Thus, the notice of appeal filed on December 13, 1989, was timely.
 
 
 3
 The investors also filed a timely notice of appeal as to the defendants pursuant to Federal Rule of Civil Procedure 54(b). On April 21, 1989, the district court made the proper Rule 54(b) certification that there was no just reason for delay and ordered that the October 3, 1988, summary judgment order be entered as the final judgment. The time for appeal, however, did not begin to run until the separate document that contained the final judgment was entered by the clerk on May 16, 1989. Fed.R.Civ.P. 58; Vernon v. Heckler, 811 F.2d 1274, 1276 (9th Cir.1987). Thus, the notice of appeal filed on June 15, 1989, was timely, and we can properly review the propriety of the summary judgment.
 
 
 4
 We review a summary judgment de novo. Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339 (9th Cir.1989). We must determine "whether, viewing the evidence in a light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court applied the relevant substantive law." Id. at 1339-40.
 
 II
 
 5
 A. The Special Master's Findings of Fact.
 
 
 6
 The investors argue that the district court erred in granting summary judgment because it relied solely on the Special Master's Findings of Fact (SMFF) and ignored substantial deposition testimony, affidavits, and other written evidence. The summary judgment order, however, indicates that the district court considered the parties' motions and supplemental papers. The parties appended numerous declarations and exhibits to these submissions. Moreover, the SMFF cited to numerous deposition transcripts, exhibits, and other submissions by the parties. Therefore, it appears that the district judge properly analyzed all of the facts brought to its attention by the investors.
 
 
 7
 B. Fraud and Negligent Misrepresentation Counts.
 
 
 8
 The investors argue that the district court erred in granting summary judgment against Lombardo and Robert Brady on counts three, four, and fourteen. The investors have failed to show that the defendants or Wright made any misrepresentations to Lombardo or Robert Brady concerning the Campo II or III transactions. The investors, however, argue that the defendants and Wright may be held liable because they failed to disclose the change of user problem. Section 1572 of the California Civil Code establishes liability for "[t]he suppression of that which is true, by one having knowledge or belief of the fact." Cal.Civ.Code § 1572 (West 1982). The investors argue that knowledge of the change of user problem can be inferred because Haney, Ronald Brady's accountant, met with Dairy Fresh to discuss the transactions. The investors point out that at some point after this meeting, Haney indicated to Brady that he must ensure that the user is changed. However, the investors have presented no evidence that the change of user requirement was actually discussed during these meetings or that the defendants or Wright otherwise discovered the change of user problem.
 
 
 9
 The investors further argue that the defendants and Wright were reckless in not discovering the problem. The plain language of section 1572, however, requires that the defendants have knowledge of the fact not disclosed. See Continental Airlines, Inc. v. McDonnell Douglas Corp., 216 Cal.App.3d 388, 404, 264 Cal.Rptr. 779 (1989) (Continental Airlines ). To the extent that the California courts construe the term knowledge to encompass recklessness, there is no evidence that the defendants or Wright was reckless merely because they did not investigate or otherwise discover the change of user problem.
 
 
 10
 The investors also argue that knowledge of the change of user problem can be imputed to the defendants and Wright because Little was their agent. However, when Little was making the relevant representations he was acting as the agent of the investors. Therefore, no knowledge should be imputed to the defendants or Wright. See People v. Park, 87 Cal.App.3d 550, 566, 151 Cal.Rptr. 146 (1978).
 
 
 11
 The investors also incorrectly argue that the defendants and Wright should be held secondarily liable because Little was their agent. The investors provided no evidence that Little was Wright's actual or ostensible agent. Actually, the evidence indicates that Little was acting in his fiduciary capacity as an investment counselor to the investors when Little made the misrepresentations concerning the tax benefits to the investors. The investors have not shown that the defendants or Wright caused Robert Brady or Lombardo to believe that Little was acting as the defendants' agent rather than the investors' agent when making these representations. The investors fail to argue clearly and distinctly or present any case law indicating that liability is appropriate in this unique situation. See International Union of Bricklayers & Allied Craftsmen Local Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1404 (9th Cir.1985) (International Union ).
 
 
 12
 The investors also contend that the defendants and Wright should be held liable because they were engaged in a joint venture with Little. However, the investors have produced no evidence, other than Feichtinger's unilateral statement, that there was an actual joint venture or partnership relating to the Campo transactions with Little on one side and Wright or the defendants on the other side.
 
 
 13
 There is also no need to address the agency relationship between Wright and the defendants. Wright has made no actionable fraudulent misrepresentation or omission that can be imputed to the defendants.
 
 
 14
 Ronald Brady argues that the district court erred in granting Wright and the defendants' motion for summary judgment on count three. Brady argues that his reliance on Little's representations was reasonable because Little allayed any doubts that Brady had concerning the Campo investments. Brady also argues that the adverse information he received from others was not of a character to influence him. Ronald Brady, however, was specifically informed by his accountant that unless he actually received change of user documentation he would be exposed to liability. Little attempted to allay Brady's fears by stating that an actual change of user would occur or paperwork could be made to look like a change of user occurred. When this statement is considered in light of the information and warnings that Brady received from his accountants, it is clear that Brady did not reasonably rely on Little's statements. See 5 B. Witkin, Summary of California Law § 712 (9th ed. 1988).
 
 
 15
 Brady also argues that he should not be held responsible for the information discovered through his investigation because where a confidential or fiduciary relationship exists, the principal is not required to undertake an investigation at all. Brady, however, chose to conduct an investigation and discovered that there was a change of user problem with the investment. The fiduciary relationship between Brady and Little should not protect Brady under these conditions.
 
 
 16
 We also reject the investors' argument that the district court erred by granting summary judgment on counts three, four, eleven, and fourteen with respect to the started pullet program. The district court correctly concluded that these investors suffered no tax damages as a result of the program. The investors, however, argue that they incurred other damages that were not recognized by the district court. The investors first argue that they are entitled to the return of their consulting fees. The consulting fees, however, were paid in order to invest in a tax shelter scheme, and the investors received tax benefits. The investors also contend that they paid for chickens that they never received. However, the investors were in substance purchasing a tax shelter not chickens. Moreover, Dairy Fresh agreed to repurchase the birds after twenty-six weeks; therefore, it appears that the investors were repaid for any birds purchased.
 
 
 17
 The investors also argue that they incurred higher management fees, care, and other related costs to raise the more mature chickens. The investors have provided no citations to the record that indicate that they were charged higher fees because the chickens were mature. The investors have also not produced any evidence that they would not have invested in the program if they knew higher fees would be charged. The investors were purchasing a tax shelter; therefore, even if higher fees were charged, the investors likely obtained increased tax benefits.
 
 
 18
 The investors also argue that they would have demanded a higher return if they knew that the chickens were producing eggs. But because the investors were primarily purchasing tax benefits, there is no indication that they would have sought a higher return.
 
 
 19
 The investors argue that the district court erred in granting summary judgment in favor of the defendants on counts six through thirteen and in favor of Wright on counts six through nine and eleven through thirteen. The investors have pointed us to no evidence that the defendants or Wright made any misrepresentations concerning the Dinuba Poppy Farm. Moreover, the defendants and Wright can be held liable for a failure to disclose material facts only if it is shown that they had "knowledge of such facts and of their being unknown to or beyond the reach of the plaintiff." See Continental Airlines, 216 Cal.App.3d at 404. It must also be established that the defendants and Wright intended to "induce action by the [investors]" and that the investors took actions that resulted in damages due to the nondisclosure. Id. The investors have failed to produce facts and cite case law that indicate that there is a genuine issue of material fact as to whether this standard has been met. See International Union, 752 F.2d at 1404.
 
 
 20
 Alternatively, the investors argue that the defendants and Wright should be held secondarily liable because they were involved in the underlying scheme and Little was acting as their agent. The investors, however, have produced no evidence that indicates that Little was the defendants or Wright's agent for the purposes of the Dinuba program. Feichtinger's statement that he had used Little as a con-man in the past is not sufficient to establish either that Little was Feichtinger's agent for this transaction or that Feichtinger had any knowledge of the underlying fraud that is the subject of this action. The only evidence presented shows that Little created and implemented the Dinuba investment program on his own behalf.
 
 
 21
 Moreover, the investors have also not pointed to any evidence that Wright was acting as the defendants' agent in the Dinuba transaction. Wright was acting on his own behalf as an investor and participant in the Dinuba project. There is also no evidence that the defendants caused anyone to believe that Wright was acting as his or her agent in this transaction. There was a concerted effort not to disclose the full scope of Wright's involvement to the defendants. Therefore, it cannot be reasonably inferred that Wright was acting as the defendants' agent.
 
 
 22
 There is no need to address Ronald Brady's argument that the district court erred in determining that he suffered no damages under count nine. Even if Brady suffered damages, the summary judgment was appropriate for the reasons given above.
 
 
 23
 C. Declaratory Relief Count (Count 18).
 
 
 24
 Ronald Brady argues that the district court erred by granting summary judgment on the declaratory relief and indemnification count (count 18). Under American Motorcycle Ass'n v. Superior Court of Los Angeles County, 20 Cal.3d 578, 598, 146 Cal.Rptr. 182, 578 P.2d 899 (1978), a concurrent tortfeasor may "obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis." Although the district court's order does not expressly indicate why summary judgment was granted, it is clear that the district court disposed of this claim because the investors failed to show that the defendants made any misrepresentations or otherwise culpably participated in any of the underlying fraudulent misrepresentations alleged in counts three through thirteen. The investors have pointed to no conduct on the part of the defendants that indicates that the defendants are culpable for the damages incurred by Asaro or Feinstein.
 
 
 25
 D. State Securities Count (Count 19).
 
 
 26
 The investors also argue that the district court erred in holding that the defendants could not be held liable under state securities law (count 19). The investors initially point out that neither the defendants nor the district court "addressed this Count in the underlying Motions for Summary Judgment." However, the merits of count nineteen were raised by the underlying motions and memoranda. Moreover, the district court's summary judgment order clearly disposes of the securities claims by stating that the defendants' motion for summary judgment is granted on all counts as to all plaintiffs. The order explains in great detail why the motion must be granted on the various other counts of the complaint, and the district court must have intended that these explanations also apply to the state securities counts.
 
 
 27
 The investors argue that the rationale given for disposing of the other claims of the complaint does not justify disposing of the state securities claims based on Cal.Corp.Code §§ 25400, 25401, 25503, 25110, 25130, 25133 (West 1977). The investors argue that the elements that establish liability under state securities law differ fundamentally from the elements required to establish liability under the other counts of the complaint. The investors point out that reliance is not required to establish a violation of section 25400 and that a plaintiff is not required to plead negligence or prove reliance or causation under section 25401. See Bowden v. Robinson, 67 Cal.App.3d 705, 714-15, 136 Cal.Rptr. 871 (1977). The investors also state that no showing of scienter, negligence or reliance is required to establish violations of sections 25503, 25110, and 25130. See id. at 712.
 
 
 28
 However, the district court emphasized throughout the order that the defendants did not make any misrepresentations to any investor or otherwise participate in any of the underlying fraudulent misrepresentations alleged in counts three through thirteen. The investors have not clearly and distinctly argued how the district court erred by holding that liability may not be imposed on a corporation under these circumstances. Moreover, the investors have failed even to outline how sections 25503, 25110, 25130, and 25133 were violated by the transactions that are the subject of this action.
 
 
 29
 E. Federal Securities Count (Count 21).
 
 
 30
 The investors claim that the district court committed reversible error by failing to explain adequately why Wright's involvement in the Campo transactions did not constitute a federal securities violation (count 21). However, when the district court's order is read as a whole, it is clear that the district court granted Wright's motion because Wright did not make any actionable representations and was not otherwise culpable for Little's misrepresentations regarding the Campo investments.
 
 
 31
 The investors also argue that the district court erred because the defendants and Wright must be held liable under the federal securities laws if they intentionally mislead someone through silence or if they acted recklessly with respect to the misrepresentations or omissions in question. See Burgess v. Premier Corp., 727 F.2d 826, 832 (9th Cir.1984). But there is no evidence that Wright or the defendants made any actionable representations or had any knowledge of the change of user requirement. An individual may be held liable for recklessness only if he or she "had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although they could have done so without extraordinary effort." Id. (internal quotations omitted). It appears that the defendants did have some prior experience with tax shelters and did fail to investigate the change of user requirement. However, these facts alone do not indicate that either the defendants or Wright had any reasonable grounds to believe that there was a change of user problem with the Campo investments.
 
 
 32
 The investors also argue that the defendants and Wright may be held secondarily liable as controlling persons under section 20(a) of the Securities Exchange Act of 1934. However, the defendants and Wright may not be held liable if it is established that they were not culpable participants in the fraudulent scheme. See Orloff v. Allman, 819 F.2d 904, 906 (9th Cir.1987) (Orloff ). The defendants and Wright have consistently denied that they were culpably involved in Little's fraudulent scheme. There is no evidence that either the defendants or Wright knew of the change of user problem or "culpably refused to see" the problem. Id. at 907. Moreover, there is no evidence that the defendants or Wright, as alleged fiduciaries, were reckless in failing to investigate the legitimacy of the investment scheme.
 
 
 33
 The investors also argue that Wright and the defendants should be held liable for their failure to supervise Little under the broker-dealer rule. When determining whether to impose the duties of a broker-dealer on other entities, a court must consider several factors, including "the extent to which statutory or regulatory law or the defendant's own policies require supervision" and whether there is a "public policy need to impose such a requirement." Kersh v. General Council of Assemblies of God, 804 F.2d 546, 550 (9th Cir.1986). The investors, however, have pointed us to no law or agreement that expressly requires the defendants to supervise closely and investigate Little's activities. The investors have pointed to no strong public policy that requires the defendants and Wright to supervise all of Little's activities closely. The defendants and Wright are not analogous to broker-dealers and should not be held liable under the broker-dealer rule. See Orloff, 819 F.2d at 907.
 
 
 34
 The investors also argue that the defendants and Wright may be held secondarily liable as aiders and abettors under the federal securities laws. The investors however have failed to show that the defendants or Wright had actual knowledge of the primary wrong committed by Little or of their role in furthering that wrong. Id.
 
 
 35
 Ronald Brady also claims that the district court erred in granting summary judgment on the federal securities count. Brady argues that he justifiably relied on the statements made by Little concerning the Campo investments. Brady's arguments were rejected above in the discussion of Brady's fraud and negligent misrepresentation claims.
 
 
 36
 We also reject the investors' argument that the district court erred in holding that the defendants and Wright were not liable under the federal securities laws for their involvement in the started pullet program. As discussed above, no damages were sustained by the investors as a result of the started pullet investment program. The investors have not clearly argued in their opening brief that the district court erred in determining that proof of damages is required in a securities fraud case.
 
 
 37
 Karl Schlak, Terrain, Inc., Erling Schlak, Gerner, Inc., Henry Jessen, Evelyn Jessen, Triple J Farms, Inc., and Allen Larson further argue that Wright and the defendants should be held liable under the federal securities laws for their involvement in the Dinuba Poppy Farm transactions. They have failed, however, to demonstrate that the district court erred by holding that Wright and the defendants may not be held primarily liable under the federal securities laws for making a misrepresentation or suppressing information. See International Union, 752 F.2d at 1404. Additionally, we agree with the district court's conclusion that the defendants and Wright cannot be held secondarily liable as controlling persons because they did not have "actual power or influence over the alleged controlled person." Orloff, 819 F.2d at 906. The district court did not err in concluding that Wright and the defendants were not aiders and abettors. The investors have failed to point us to facts and case law that indicate that the defendants or Wright had actual knowledge of the primary wrong committed by Little or of their role in furthering it. See id. at 907.
 
 
 38
 Ronald Brady argues that the district court erred by holding that he was not merely a passive investor in the Dinuba scheme under the federal securities laws. An investment will be viewed as an investment contract only if "the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." Securities & Exch. Comm'n v. Glenn W. Turner Enter., 474 F.2d 476, 482 (9th Cir.), cert. denied, 414 U.S. 821 (1973). Brady's efforts, however, were essential in determining the scope, character, and eventual success or failure of the Dinuba project. Brady's actions went far beyond the "modicum of effort" that we tolerate. Brady has not presented any other arguments in his opening brief that indicate that the district court erred in granting summary judgment on this count.
 
 
 39
 F. Conspiracy Count (Count 24).
 
 
 40
 The investors contend that the district court erred in holding that the defendants are not liable for conspiracy under count 24. "[A] plaintiff is entitled to damages from those defendants who concurred in the tortious scheme with knowledge of its unlawful purpose." Wyatt v. Union Mortgage Co., 24 Cal.3d 773, 784, 157 Cal.Rptr. 392, 598 P.2d 45 (1979). The investors, however, have failed to show that the defendants gave their tacit consent to the fraudulent scheme in this case.
 
 
 41
 G. Attorneys' Fees.
 
 
 42
 Wright has requested attorneys' fees for this appeal under 28 U.S.C. § 2412(d)(3). Section 2412(d)(3), however, does not authorize a fee award in this case.
 
 
 43
 The remaining issues were disposed of in a published disposition. The parties shall bear their own costs on appeal.
 
 
 44
 AFFIRMED IN PART, AND REVERSED AND REMANDED IN PART.