97 F.3d 1460
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NORDELL INTERNATIONAL RESOURCES LTD.,
Plaintiff-Counter-Claimant-Appellee,
v.
TRITON OIL, Defendant,
and
Triton Indonesia Incorporated;
Defendant-Counter-Claimant-Plaintiffs-Appellants.
 No. 94-56110.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 14, 1995.
Decided May 3, 1996.
 
 Before: SCHROEDER, FERGUSON, and O'SCANNLAIN, Circuit Judges
 MEMORANDUM*
 Triton Indonesia, Inc. and Triton Energy Corporation appeal the district court's judgment, following this court's remand in a prior appeal, finding that Veronex Resources, Ltd. had not consented to a determination of its alter ego status by an arbitration panel and that Veronex was not the alter ego of Nordell International Resources, Ltd. In this action brought under the Federal Arbitration Act, 9 U.S.C. § 11, Triton alleges that Nordell and Veronex violated an agreement for the operation and development of an oil-producing field in Indonesia.[1]
 * The district court, in essence, conducted a plenary proceeding in the form of a bench trial. The court received evidentiary submissions consisting of declarations and documents on both the issue of Veronex's possible waiver of a judicial determination of the alter ego issue, and then, whether Veronex was the alter ego of Nordell. A conclusion was reached after weighing evidence and making factual findings from conflicting facts and inferences presented by both sides. See Fed.R.Civ.P. 52(a).
 Consequently, the district court decided the ultimate factual and legal issue of whether Veronex by its conduct, or otherwise, had waived its right to have an independent determination of the alter ego question. This determination was primarily factual in nature such that the ultimate issue of whether Veronex's consent or waiver had occurred is subject to the clearly erroneous standard of review. Towe Antique Ford Foundation v. IRS, 999 F.2d 1387, 1391 (9th Cir.1993); Fortune, Alsweet & Eldridge, Inc. v. Daniel, 724 F.2d 1355, 1357 (9th Cir.1983).
 * Triton contends that the district court erred in its finding that Veronex did not consent to determination of the alter ego issue by the arbitration panel because the court limited its review to Veronex's conduct before the arbitration panel following the district court's remand in February 1991. We disagree.
 In its memorandum order, the district court discussed the remand instructions of a panel of this court "informing both parties that the issue for remand was not whether Veronex had consented to jurisdiction, but rather whether Veronex had consented to allow the arbitration panel to determine the alter ego issue, or ... 'whether Veronex had waived its right to an independent judicial determination of the issue.' " In addressing that question, this court instructed that the focus be upon "the nature of Veronex's participation in the proceedings."
 The determination of whether Veronex consented to arbitration regarding the alter ego issue thus turns on the interpretation of the phrase "participation in the proceedings." The district court reasoned that the parties were to limit their focus to "the behavior of Veronex towards the arbitration panel after the February 1991 remand, when Veronex was on notice that the arbitration panel was contemplating the imposition of liability against Veronex." Triton, however, insists that the instruction compels an examination of the participation in the proceedings as a whole, including Veronex's initiation of the disputes which were the subject of arbitration, its active participation during the arbitration, and its actions before this court and the district court.
 The district court was correct in ruling that the proper factual inquiry is the conduct of Veronex after the district court's remand order of February 6, 1991. Accordingly, the district court correctly concluded that Veronex did not consent to the arbitration panel regarding alter ego determination. There was no evidence indicating that Veronex had given its express consent. Because "an agreement to arbitrate an issue ... can be implied from the conduct of a party" as well, the district court also reviewed the conduct of Veronex during the remand proceedings. Daniel, 724 F.2d at 1356. The court concluded that the company's conduct also failed to evidence consent to a determination of the alter ego issue by the arbitration panel. It is undisputed that Veronex was not a party to the arbitration proceedings on remand and that Veronex did not attempt to intervene.
 B
 We must next decide whether or not Veronex waived its right to an independent judicial determination of the alter ego issue. Concluding that "a 'waiver' is the voluntary relinquishment of a known right,' " and that there was "evidence in the record that Veronex was aware of its potential liability as an alter ego prior to the award in December 1990," the district court asserted that the waiver analysis should also address only the period following February 1991.
 A party impliedly waives its right to an independent judicial determination of alter ego liability if it appears before an arbitration panel to assert that it is not an alter ego. Because Veronex made but one appearance before the panel, in which it sought to correct the panel's award on the basis that the arbitrator had no authority to make a finding of liability against a non-party, the district court correctly concluded that Veronex did not waive its right to an independent judicial determination.
 II
 The district court's finding that Veronex is not the alter ego of Nordell is subject to review under the clearly erroneous standard. Board of Trustees v. Valley Cabinet & Mfg. Co., 877 F.2d 769, 772 (9th Cir.1989). In considering whether to impose alter ego liability, a federal court applies federal substantive law, although it may look to state law for guidance. Id.
 * The determination of whether or not to pierce the corporate veil is based upon three factors:
 (1) the amount of respect given to the separate identity of the corporation by its shareholders;
 (2) the degree of injustice visited on the litigants by recognition of the corporate entity; and
 
 
 1
 (3) the fraudulent intent of the incorporators.
 
 
 2
 Id. at 772 (quoting Seymour v. Hull & Moreland Eng'r, 605 F.2d 1105, 1111 (9th Cir.1979)); Ministry of Defense v. Gould, Inc., 969 F.2d 764, 769 (9th Cir.1992). A party seeking to pierce the veil must prevail on the first threshold factor and on either of the other two. UA Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1475 (9th Cir.), cert. denied, 116 S.Ct. 297 (1995).
 
 
 3
 * A disregard of corporate formalities or a serious abuse of the corporate identity can be established by a number of methods including (1) commingling of funds between the alter ego entities, (2) parent's treating of the subsidiary's assets as its own, (3) subsidiary's owning less than an adequate amount of assets to carry on its business, and (4) the presence of interest-free loans taken from the corporation. Seymour, 605 F.2d at 1112.
 
 
 4
 The district court concluded that Veronex did not demonstrate sufficient respect for Nordell's separate corporate identity during the period of the Joint Venture Agreement. Triton presented abundant evidence indicating that Nordell and Veronex disregarded their corporate separateness during the Joint Venture period, that Veronex treated Nordell's assets as its own, that Nordell had insufficient liquid assets to carry on its business, and that Veronex made interest-free loans to Nordell (although the loans predated the parties' parent-subsidiary relationship).
 
 
 5
 Veronex has not appealed the district court's decision on this point. Thus, the district court's analysis of this factor is undisputed. Veronex did not respect Nordell's separate corporate formality. The alter ego inquiry does not end at this point, however; "[e]vidence establishing shareholder disrespect for a corporation's separate identity alone is an insufficient reason to pierce the corporate veil." Valley Cabinet, 877 F.2d at 773.
 
 2
 
 6
 The district court summarily found "no evidence of inequity or injustice, apart from Triton's inability to collect from Nordell." Triton argues that it presented additional evidence sufficiently establishing additional inequity, and that the district court's summary finding was therefore erroneous.
 
 
 7
 An "inability to collect [upon a judgment] does not, by itself, constitute an inequitable result." Seymour, 605 F.2d at 1113. However, the Ninth Circuit has recognized that severe undercapitalization can satisfy the element of injustice to litigants if the capital input is insufficient to meet obligations that "could reasonably be expected to arise in the normal course" of the corporation's business. Slottow v. American Cas. Co., 10 F.3d 1355, 1360 (9th Cir.1993); Laborers Clean-Up Contract v. Uriarte Clean-Up Serv., 736 F.2d 516, 524 (9th Cir.1984). The type of injustice or "kind of 'inequitable' result that makes alter ego liability appropriate is an abuse of the corporate form, such as undercapitalization or misrepresentation of the corporate structure to creditors." Orloff v. Allman, 819 F.2d 904, 909 (9th Cir.1987), abrogated on other grounds, Hollinger v. Titan Corp., 914 F.2d 1564 (9th Cir.1990).
 
 
 8
 The record indicates that Nordell's financial difficulties did not extend beyond an inability to pay off a judgment. This evidence does not sufficiently establish injustice to Triton to hold Veronex liable as the alter ego of Nordell.
 
 
 9
 As stressed by the district court, upon entering the contract, Triton was aware of the financial difficulties Nordell was experiencing. There were numerous provisions in the Farmout Agreement itself which reference Nordell's cash deficiency and attempt to protect Triton from Nordell's creditors. In addition, the Veronex 1988 Annual Report specifically mentions that the Indonesian oil operations were cash-stripped. Moreover, Coopers & Lybrand issued an unaudited Nordell balance sheet, dated May 31, 1988, that indicated a cash position of only $407,382. Finally, the evidence shows that Triton conducted substantial due diligence before entering into the ENIM joint venture agreement.
 
 
 10
 Hite has averred that "[d]uring ... negotiations, both Nordell and Triton discussed the fact that Nordell was cash poor, and [they] mutually understood that forfeiture was the sole remedy if Nordell were to default any terms of the farmout agreement."
 
 3
 
 11
 Fraudulent intent can be satisfied "either by proof of fraud in the formation of the corporation or fraudulent misuse of the corporate form after incorporation." Valley Cabinet, 877 F.2d at 773 (emphasis in original). Fraudulent intent can also be established solely by evidence of undercapitalization. Gould, Inc., 969 F.2d at 769. Insisting that Nordell's lack of capital alone constitutes fraudulent intent, Triton argues that the district court erred in its finding that there was no evidence of fraudulent intent. We are unpersuaded.
 
 
 12
 The district court stated that it had found almost no evidence of fraudulent intent on the part of the officers and directors of Veronex and Nordell. Although conceding that undercapitalization can, in certain circumstances, constitute evidence of fraud, the court stated that "any inference of fraud from Nordell's alleged undercapitalization [was] completely negated by the evidence of Nordell's corporate history." The court then pointed to the fact that Nordell conducted a "legitimate business enterprise" for eight years before the Joint Venture Agreement, and cited the proposition from Seymour, that "[t]he very fact of continuing to do business for a period of at least five years tends to indicate a good faith use of the corporation to conduct a legitimate business enterprise." 605 F.2d at 1113.
 
 
 13
 We agree with the district court that "the picture that emerges from the record is one of a legitimate joint venture arrangement, with full disclosure and good faith negotiation on both sides." The district court did not err in finding no fraudulent intent.
 
 
 14
 Triton can satisfy only one of the two required elements of the federal alter ego test. Therefore, the district court did not clearly err in concluding that Veronex was not the alter ego of Nordell under federal law.
 
 B
 
 15
 California law requires two elements for the application of the alter ego doctrine: (1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) that an inequitable result will follow if the acts [giving rise to liability] are treated as those of the corporation alone. Orloff, 819 F.2d at 908; Automotriz del Golfo de California S.A. v. Resnik, 306 P.2d 1, 3 (1957).
 
 
 16
 Triton contends that the district court, although correct in finding Veronex-Nordell unity of interest and ownership, was incorrect in summarily finding insufficient evidence of an inequitable result or injustice under state law.
 
 
 17
 The kind of inequitable result necessary to find alter ego liability under state law is an abuse of the corporate form, such as undercapitalization or misrepresentation of the corporate structure to creditors. Orloff, 819 F.2d at 909; American Home Ins. Co. v. Travelers Indem. Co., 175 Cal.Rptr. 826, 834 (1981).
 
 
 18
 Under California law, Nordell's alleged undercapitalization is insufficient to establish alter ego status. As the California Supreme Court has stated, "adequate capitalization" is but only one factor in the alter ego determination. Automotriz del Golfo, 306 P.2d 1, 3 (1957).
 
 
 19
 Moreover, in G.E.J. Corp. v. Uranium Aire, Inc., 311 F.2d 749 (9th Cir.1962), this court, applying California alter ego law, upheld a finding of alter ego against a parent corporation whose subsidiary entered into an option contract with another corporation. Id. at 757. However, the circuit panel noted that, under California law, "the alter ego doctrine should not be applied where the plaintiff dealt with the corporation having full knowledge of the facts and where considerations of equity and fair dealing do not require application of the doctrine on his behalf." Id. Here, because of Triton's extensive pre-Farmout Agreement due diligence, Veronex could not, and did not, provide fraudulent assurances to Triton about Nordell's financial strength, as was the case in Uranium Aire. Id. at 757.
 
 III
 
 20
 Triton contends that the district court abused its discretion in denying Triton's request for further discovery prior to a summary disposition on the alter ego issue. A district court's order denying request for discovery is reviewed for abuse of discretion. Harris v. Duty Free Shoppers Ltd. Partnership, 940 F.2d 1272, 1276 (9th Cir.1991).
 
 
 21
 Ordinarily, summary judgment is not granted when there are relevant facts remaining to be discovered, but the party seeking discovery bears the burden of showing what specific facts it hopes to discover that will raise an issue of material fact. Harris, 940 F.2d at 1276.
 
 
 22
 The district court's order explains that Triton's discovery request was denied for three reasons. First, the request was "completely at variance with the summary procedure adopted by the Court at the urging of Triton's counsel." Second, "the request for discovery, timed as it was after an adverse ruling on the first issue of consent, appear[ed] to the Court as an effort by Triton to manipulate the proceeding to avoid an unfavorable result." Third, "Triton's request was not properly brought before the Court by a noticed motion or ex parte application." Triton should have made a separate motion making a specific request for discovery, rather than including it in a supplemental memorandum.
 
 
 23
 The district court has articulated three valid reasons. Thus, the district court did not abuse its discretion in denying Triton's request for further discovery.
 
 
 24
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Veronex Resources' motion for judicial notice of the Texas case Triton Energy Corporation v. International Veronex Resources Ltd., cause No. 394CV-1472G, filed June 15, 1994 in Texas state court and removed July 12, 1994 to the United States District Court for the Northern District of Texas, Dallas Division, is GRANTED. However, we take judicial notice only of the existence of the proceeding in Texas district court, and not necessarily the implications asserted in the motion